Opinion issued March 10, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-09-00749-CR

————————————

JESSE JAMES SMITH, appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 300th District Court

Brazoria County, Texas



Trial Court Cause No. 60195

 



 

 

O P
I N I O N

 

          Appellant,
Jesse James Smith, appeals a judgment convicting him for continuous sexual
assault of a child, for which he was sentenced to 70
years in prison.  See Tex. Penal
Code Ann. § 21.02 (West Supp. 2010).  In six issues, appellant challenges the
sufficiency of the evidence, the instruction to the jury that purportedly
assumed an element of the offense, and the trial court’s exclusion of text and
voice messages that appellant wanted to use to impeach a witness.  We conclude that the
evidence is sufficient, that the erroneous jury instruction concerning the
failure to expressly require two acts of sexual abuse during a period of 30 or
more days in duration constitutes harmless error, and that the trial court did
not abuse its discretion by excluding evidence of text messages and voicemail
recordings left by the complainant’s mother to appellant.  We affirm.

Background

In 2005, when the
complainant was five years old, her mother married appellant.  The complainant’s mother brought with her
three children—the complainant and two older sons—from her previous marriage to
live with her and appellant.  On November
28, 2007, the complainant’s mother gave birth to twins, which are her and appellant’s only children together.

One night in September 2008,
as the complainant’s mother was putting the complainant to bed, she noticed
that her daughter was very upset.  When
asked why, the complainant said that she missed her biological father.  Her mother did not believe it because the
complainant had just spent the weekend visiting him.  Her mother persisted in asking, and the
complainant told her to ask appellant, but she declined.  Tearfully, the complainant then told her
mother that appellant had told her that his “bullet” hurt and that she needed
to kiss it and rub it to make it feel better. 
When appellant was 19 years old, he had suffered a gunshot wound, which
left bullet fragments in his abdomen. 
The fragments formed a hernia, slightly protruding from his
abdomen.  However, when her mother asked
her to indicate the location of “bullet” that she was made to kiss, the
complainant pointed very low on her abdomen, to the groin area.  As her mother sat with her for the next few
hours, the complainant revealed that appellant had made her kiss his “bullet” on
numerous occasions.  The complainant also
recounted another occasion on which appellant had disrobed her and kissed “down
there.”  When her mother asked her when
these things had occurred, the complainant told her it had happened during “the
summer,” but she did not specify the year.

The next morning, the complainant’s
mother falsely told appellant that she was taking her children to the doctor.  That day, she took her children, fled from
her home, and called the police to report the sexual abuse.  The following day, Officer DuBois, a criminal investigator specializing in crimes against
children, was assigned the case.  During the month that followed, appellant and
the complainant’s mother sent each other text messages and voicemail
recordings, none of which mentions anything about the allegations of child
abuse.  The complainant’s mother later
testified that she did not reveal to appellant that she knew about the sexual
abuse because she feared what he would do. 
In the three months after which she and her children fled their home,
they lived with friends and in various shelters until appellant’s arrest in
November.

The Brazoria County grand jury
indicted appellant on three counts, in trial cause number 60195.  In Count One, the
indictment alleges that appellant committed the offense of continuous sexual
abuse of a child.  Specifically, the
indictment states that appellant committed two or more acts of sexual abuse
against the complainant on or about December 1, 2007, through September 1,
2008, “which said time period being a period that was 30 or more in duration”
and that the complainant was younger than 14 years of age during that period.  The indictment further clarifies that each
act of sexual abuse underlying the offense occurred on more than one occasion.

In Counts Two
and Three, the indictment alleges that appellant engaged in two discrete acts
of aggravated sexual assault against the complainant.  The first discrete act—intentionally or
knowingly causing his sexual organ to penetrate the complainant’s mouth—is said
to have occurred on or about July 1, 2008. 
The second discrete act—intentionally or knowingly causing his mouth to
contact the complainant’s sexual organ—is said to have
occurred on or about August 1, 2008.

          At
the time of trial, in August 2009, the complainant was nine years of age.  Although she testified that she did not know when the first
or last acts occurred, the complainant testified that appellant started
sexually abusing her during the summer when her mother was pregnant with the
twins.  The twins were born on November
28, 2007, placing the first sexual assault sometime during summer 2007.  The complainant also testified that appellant
stopped sexually abusing her when the twins were about two weeks old, placing
the last sexual assault around December 15, 2007.  After the sexual abuse ended, in spring 2008,
appellant underwent hernia repair surgery during which doctors removed the
bullet fragments from his abdomen.  

          The complainant testified as to the
existence of at least 12 instances of sexual abuse, all except for three
occurring in the laundry room.  On 11 of
the instances, the complainant stated that appellant instructed her to kiss and
lick his “bullet.”  In the beginning, the
complainant would close her eyes.  Later
on, appellant told her she could open her eyes. 
She testified that what she referred to as his “bullet” was in fact his sexual
organ, not the bullet fragments, which at the time still protruded from his abdomen.  While testifying, the complainant drew a
picture of appellant’s sexual organ, which she described as looking like a jellyfish.  This drawing was shown
to the jury.  The complainant also
testified that by “lick” and “kiss” she meant that she had to put her mouth around
his sexual organ.  In general, each of
these instances lasted approximately one minute.  During a few instances, he would stop when
she asked him to, but during other instances, he would continue.

          The complainant testified that during an
instance in the laundry room, she accidentally scraped appellant’s sexual organ
with her teeth.  Appellant reacted by
telling her to not do that so much. 
Subsequently, he instructed her not to bite.  During another instance in the laundry room,
she said that she did not like the taste. 
Appellant got some cake frosting and rubbed it on his sexual organ; he
told her to lick it off, which she did.

          The complainant testified, describing
three instances in the master bedroom. 
During one instance, appellant informed her that he could make a
substance come out of his sexual organ but that she would have to help.  He again had her lick it, and after couple
minutes, he told her to back off, which she did.  She witnessed appellant ejaculate.  She described his ejaculate as “yellow stuff,”
looking like “pee.”  The complainant
testified that this was the only instance when a substance came out of
appellant’s sexual organ.

The complainant described a
second instance in the master bedroom, which occurred around the end of the
summer.  Appellant disrobed her and licked
her sexual organ with his tongue for one or two minutes until she asked him to
stop, which he did.  The complainant stated
that this was the only instance on which he licked her sexual organ.

The complainant testified
that during a third instance in the master bedroom, she was in appellant’s bed
when he instructed her to lick and kiss his sexual organ.  However, they both heard the complainant’s
eldest brother calling for her.  Her
brother’s voice grew louder as he approached the master bedroom.  Appellant hid the complainant under the
covers before her brother reached the master bedroom.  The complainant’s brother also testified to
the same event, describing it as occurring around 8:30 p.m. on a school
night and explaining he was responsible for getting her ready for bed because
they both had school the next day.  After
searching the rest of the house, the complainant’s brother entered the master
bedroom and asked appellant if he had seen the complainant.  Appellant said that he did not know where she
was.  After the complainant’s brother left, appellant told the complainant he was
kidding, and he let her go.  A moment
later, the complainant’s brother saw her walk past his bedroom door on the way
to her bedroom.

The jury found appellant
guilty of Count One, continuous sexual abuse of the
complainant.  Pursuant to the trial
court’s instruction, the jury did not reach the question of guilt on Counts Two and Three, which were lesser included offenses of Count One.[1]

Sufficiency of the Evidence

          In
his first two issues, appellant contends that the evidence is legally and
factually insufficient to sustain his conviction for continuous sexual assault of a child.  Specifically,
appellant challenges the element that requires proof that at least two acts of
sexual abuse occurred over a period of at least 30 days.    

A.              
Standard of Review

Appellate
courts review legal
and factual sufficiency challenges using the same standard of review.  Green v. State, No. PD-1685-10, 2011 WL 303818, at *1 (Tex. Crim. App. Jan. 26, 2011) (per curiam)
(not designated for publication); Ervin v. State, No. 01-10-00054-CR, --- S.W.3d ---, 2010 WL
4619329, at *2–4 (Tex. App.—Houston [1st Dist.] Nov. 10,
2010, pet. filed) (construing majority holding
of Brooks v. State, 323 S.W.3d 893, 912, 926 (Tex. Crim. App. 2010) (plurality and concurring ops.)).  Under this standard, evidence is
insufficient to support a conviction if considering all record evidence in the
light most favorable to the verdict, a factfinder could not have rationally
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.
Ct. 2781, 2789 (1979); In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071
(1970); Brooks, 323 S.W.3d at 899
(plurality op.); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009);
Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).  Evidence is insufficient under this standard
in four circumstances:  (1) the record
contains no evidence probative of an element of the offense; (2) the record
contains a mere “modicum” of evidence probative of an element of the offense;
(3) the evidence conclusively establishes a reasonable doubt; and (4) the acts
alleged do not constitute the criminal offense charged.  See Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786,
2789 & n.11, 2789; Laster, 275 S.W.3d at 518; Williams, 235 S.W.3d at 750.  If an
appellate court finds the evidence insufficient under this standard, it must
reverse the judgment and enter an order of acquittal.  See Tibbs v. Florida, 457 U.S. 31, 41, 102 S. Ct. 2211,
2218 (1982).

An appellate court determines whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence viewed in the light most favorable to the verdict.  Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007) (quoting Hooper v. State,
214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). 
When the record supports conflicting inferences, an
appellate court presumes that the factfinder resolved the conflicts in favor of
the verdict and defers to that resolution. 
Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton,
235 S.W.3d at 778.  An appellate court likewise defers to the
factfinder’s evaluation of the credibility of the evidence and weight to give
the evidence.  Williams, 235 S.W.3d at 750.  In
viewing the record, direct and circumstantial evidence are
treated equally:  circumstantial
evidence can be as probative as direct evidence, and circumstantial evidence
alone can be sufficient to establish guilt. 
Clayton, 235 S.W.3d at 778 (quoting Hooper, 214 S.W.3d at 13).

In this analysis, an appellate court uses a
hypothetically correct jury charge to evaluate the sufficiency of
evidence.  Grotti v. State, 273 S.W.3d
273, 280–81 (Tex. Crim. App. 2008). 
A correct jury charge accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the
State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the
defendant was tried.  Villarreal v. State, 286 S.W.3d 321, 327
(Tex. Crim. App. 2009); Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997).

B.              
Applicable
Law

 

To establish continuous sexual abuse of a child, the
State must prove three elements:

(1)       the defendant “commit[ted] two or more acts
of sexual abuse”[2]

 

(2)       “during a period that is 30 or more days in
duration,” and

 

(3)       “at the time of the
commission of each of the acts of sexual abuse, the [defendant was] 17 years of
age or older and the victim [was] a child younger than 14 years of age.”

 

Tex. Penal Code Ann. § 21.02(b);
see Williams v. State, 305 S.W.3d 886, 889 (Tex. App.—Texarkana 2010, no
pet.).  “Acts of sexual abuse” are listed in the statute, including aggravated sexual
assault and other acts not relevant here. 
See Tex. Penal Code Ann. § 21.02. 
A person commits aggravated sexual assault if he intentionally or
knowingly causes his sexual organ to contact or penetrate the mouth of a child
younger than fourteen years of age.  Tex. Penal Code Ann. § 22.021(a)(1)(B)(ii), (v), 22.021(a)(2)(B).  A person also commits aggravated sexual
assault if he intentionally or knowingly causes his mouth to contact the sexual
organ of a child younger than fourteen years of age.  Id.
§ 22.021(a)(1)(B)(iii), 22.021(a)(2)(B).  

          The
Legislature recently created the offense of continuous sexual abuse of a child
in response to an expressed need to address sexual assaults against young children
who are typically unable to give precise dates when there are ongoing acts of
sexual abuse.  See Williams,
305 S.W.3d at 890 n.7 (citing Dixon v.
State, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring)
(“Perhaps the Texas Legislature can address this conundrum and consider
enacting a new penal statute that focuses upon a continuing course of conduct
crime—a sexually abusive relationship that is marked by a pattern or course of
conduct of various sexual acts.”)).

          Ordinarily, for aggravated sexual
assault of a child, time is not a material element because the primary purpose
of specifying a date in an indictment is to show that prosecution is not barred by a statute of limitations; however, aggravated
sexual assault of a child has no period of limitations.  See
Garcia v. State, 981 S.W.2d
683, 686 (Tex. Crim. App. 1998); Tex.
Code Crim. Proc. Ann. art. 12.01(1)(B)
(West Supp. 2010); Tex. Penal Code Ann.
§ 22.021(a)(1)(B).  Similarly, continuous sexual abuse has no period
of limitations.  Tex. Crim. Proc. Code Ann. art. 12.01(1)(D) (West Supp.
2010).  Although the exact dates of the
abuse need not be proven, the offense of continuous
sexual abuse of a child does require proof that the last act of sexual abuse
occur on at least the 29th day after the day of the first act.  See Tex. Penal Code Ann. § 21.02(d) (“The
jury must agree unanimously that the defendant, during a period that is 30 or
more days in duration, committed two or more acts of sexual abuse.”); Williams, 305 S.W.3d at 890–91 (requiring State to prove two acts of
sexual abuse “committed over a span of thirty or more days”).  Furthermore, “members of the jury are not
required to agree unanimously on which specific acts of sexual abuse were
committed by the defendant or the exact date when those acts were committed.”  Tex. Penal Code Ann. § 21.02(d).

          C.      Analysis

          The complainant testified about
the period of time when the sexual acts occurred.  She described that appellant began making her
place her mouth on his sexual organ during the summer when her mother was pregnant
with the twins.  She further stated that on
one occasion, he placed his mouth on her sexual organ around the end of the summer.  She testified that the incidents of sexual
abuse stopped when the twins were newborns, about two weeks old.  The twins were born on November 28, 2007,
according to the complainant’s mother’s
testimony.  This evidence places the
sexual abuse as starting sometime during summer 2007 and ending sometime around
December 15, 2007.  As the State
explained during closing arguments, the last day of summer 2007 was September
22.  Thus, the complainant’s testimony
attests to a period at least 85 days in duration. 

The complainant’s mother testified
as the outcry witness at trial.  On
cross-examination, appellant’s counsel asked the complainant’s mother when the
incidents happened according to what the complainant told her.  The complainant’s mother replied, “[The
complainant] said [the incidents] occurred over this last summer, since last
summer or last summer.”  Appellant’s
counsel then asked if that would place the incidents as occurring in summer
2008.  The complainant’s mother replied,
“She just said the summer.”  

The complainant’s mother’s replies
are ambiguous because it is unclear whether the complainant used the adjective
“last” in September 2008 to refer to the previous summer, i.e., summer 2007, or
whether her mother added the adjective “last” at the August 2009 trial to refer
to the previous summer, i.e., summer 2008. 
If in September 2008, the complainant said that the incidents had
occurred during “the last summer,” that would place the incidents around summer
2007.  Summer 2007 is consistent with the
complainant’s own testimony and the fact that at that time, appellant still had
the actual bullet fragments in his abdomen.  On the other hand, if in September 2008, the
complainant said that the incidents had occurred during “the summer,” that
would place the incidents around summer 2008. 
The mother’s second reply suggests a third possibility, that the
complainant herself was ambiguous when she revealed the abuse in September
2008.

The jury could have reconciled any conflict
in these testimonies by reasonably interpreting the complainant’s
mother’s reply consistently with the complainant’s own testimony that
the incidents occurred during summer 2007 until the twins were two weeks old in
mid-December 2007.  Although the
complainant did not know the precise dates of the events, her description of
the ongoing sexual assaults is precisely what the Legislature intended to
address when this statute was enacted.  See Williams, 305 S.W.3d at 889–893; Dixon, 201 S.W.3d at 737 (Cochran, J.,
concurring).  The testimony of a victim,
even when the victim is a child, is alone sufficient to support a conviction
for sexual assault.  See Tex.
Code Crim. Proc. Ann. art. 38.07 (West 2005); Carty v. State, 178 S.W.3d 297, 303 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d); Jensen v. State, 66 S.W.3d 528, 534 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d); Sandoval v. State, 52
S.W.3d 851, 854 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  Viewing the
evidence in a light most favorable to the jury’s verdict, we hold the evidence
is sufficient to establish the offense of continuing sexual abuse of a child.  See
Williams, 305 S.W.3d at 889–893; Dixon, 201
S.W.3d at 737 (Cochran, J., concurring).

We overrule appellant’s first and second issues.

Instructions to Jury

In his third and fourth
issues, appellant asserts the trial court’s instructions to the jury included
an erroneous application paragraph, which lowered the State’s burden of proof
by assuming an essential element of the offense.  He believes this violated his federal
constitutional right to due process and the Code of Criminal Procedure’s
requirement for an accurate, written charge. 
See U.S. Const.
amend. XIV, § 1; Tex.
Code Crim. Proc. Ann. art. 36.14
(West 2007).  Appellant suggests that the application
paragraph in the jury charge did not include an essential element of the
offense:  proof of at least two acts of
sexual abuse occurring during a period that is 30 or more days in
duration.  He asserts that the
instruction erroneously states that December 1, 2007 to September 1, 2008, “is
a period that is 30 or more days in duration” and that this phrasing allowed
the jury to assume that the two acts of sexual abuse occurred during a period
of 30 days or more.

A.              
 Law Pertaining to Jury
Instructions

In determining whether there is reversible error in
the jury charge, we first decide whether error exists, and if error exists,
then we determine whether the defendant was harmed.  Middleton v. State,
125 S.W.3d 450, 453 (Tex. Crim. App. 2003); Abdnor
v. State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).  An appellate court must apply the egregious
harm standard to review an erroneous jury charge when the defendant’s counsel
failed to object to the charge, as in this case.  See
Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984). 
If appellant’s counsel did not make a proper objection at trial,
appellant “will obtain a reversal only if the error was so egregiously harmful
that he has not had a fair and impartial trial.”  Id.

B.              
Error Analysis

The jury instructions state:

A person commits
the offense of Continuous Sexual Assault of a Child if, during a period of
thirty (30) days or more in duration, the person commits two or more acts of
sexual abuse, regardless of whether the acts of sexual abuse are committed
against one or more victims, and at the time of the commission of each of the
acts of sexual abuse, the actor is seventeen (17) years of age or older and the
victim is a child younger than fourteen (14) years of age.

 

. . . . 

 

In order to find
the defendant guilty of the offense of Continuous Sexual Abuse of a Child, you
are not required to agree unanimously on which specific acts of
sexual abuse were committed by the defendant or the exact date when those acts
were committed.  However, in order
to find the defendant guilty of the offense of Continuous Sexual Abuse of a
Child, you must agree unanimously that the defendant, during a period that is thirty (30) or more days in duration, committed two or more
acts of sexual abuse.

 

Now, if you find
from the evidence beyond a reasonable doubt that on or about the 1st day of December, 2007, through the 1st
day of September, 2008, which said time period being a period that was 30 days
or more in duration, in Brazoria County, Texas, the defendant, Jesse James
Smith, committed two or more acts of sexual abuse against [the complainant],
said acts of sexual abuse having been violations of one or more of the
following: [two acts of aggravated sexual assault are particularly described],
then you will find the defendant guilty of the offense of Continuous Sexual
Assault of a Child, as alleged in Count One of the indictment.

 

(Emphasis added).  

 

          The
precise phrasing in the application paragraph does not specifically require a
finding that
the last act of sexual abuse occurred on at least the 29th day after the day of
the first act.  Rather, it allows a finding of guilt if two
or more acts of sexual abuse occurred “on or about the 1st day of December,
2007, through the 1st day of September, 2008, which said time period being a
period that was 30 days or more in duration.” 
This instruction lacks clarity in that, read literally, it allowed the
jury to find appellant guilty so long as two or more acts of sexual abuse occurred
between December 2007 and September 2008 regardless of whether the acts occurred
at least 30 days apart.  Thus, for
example, if the jury had found beyond a reasonable doubt that during the first
week in August 2008, appellant committed two acts of sexual abuse against the
complainant, the application paragraph read literally would have allowed the
jury to convict even though the acts would not have occurred at least 30 days
apart.  The application
paragraph of the charge is erroneous because it does not specifically require
that the jury determine that two or more acts of sexual abuse occurred during a
period at least 30 days in duration—i.e., that there is at least 28 days between
the day of the first act of sexual abuse and the day of the last act of sexual
abuse.

          C.      Harm Analysis

Having determined that the trial court erred by
failing to charge the jury as required, we examine the record to determine
whether appellant was egregiously harmed. 
Almanza, 686 S.W.2d
at 171.  Any harm that is
inflicted by an erroneous charge must be assessed   in light of (1) the entire jury charge, (2) the state of the
evidence, (3) the argument of counsel, and (4) any other relevant information
revealed by the record of the trial as a whole.  Id.; Ngo v. State, 175 S.W.3d
738, 750 n.48 (Tex. Crim. App. 2005).  Jury charge error is egregiously harmful if
“it affects the very basis of the case, deprives the defendant of a valuable
right, or vitally affects a defensive theory.” 
Stuhler v. State, 218 S.W.3d
706, 719 (Tex. Crim. App. 2007) (citing Hutch v. State, 922 S.W.2d 166,
171 (Tex. Crim. App. 1996) (plurality op.)). 
We engage in this assessment to determine the actual, not just
theoretical, harm to the accused.  Almanza, 686 S.W.2d at 174.  Furthermore, egregious harm is a difficult
standard to meet and must be determined on a case-by-case basis.  See Hutch, 922
S.W.2d at 171.

 

 

1.                
The Entirety of the Charge

Although the application
portion of the jury instructions does not specifically require that the two
acts of sexual abuse occur during a period at least 30 days in duration, the general
instructions, which precede the application paragraph, clearly explain that
requirement.  In the sentence immediately
preceding the application paragraph, the instructions expressly state,
“However, in order to find the defendant guilty of the offense of Continuous
Sexual Abuse of a Child, you must agree unanimously that the defendant, during
a period that is thirty (30) or more days in duration, committed two or more
acts of sexual abuse.”  In the earlier
paragraph explaining the general law, the instructions specify that “[a] person
commits the offense of Continuous Sexual Assault of a Child if, during a period
of thirty (30) days or more in duration, the person commits two or more acts of
sexual abuse.”  The phrasing of the
entire charge suggests the jury understood that the second act had to occur during
a period of at least 30 days in duration, such that the last act of sexual
abuse occurred on at least the 29th day after the day the first act occurred.

2.                
The Evidence

As described more particularly
above, the record shows the complainant testified that the sexual abuse began
during the summer when her mother was pregnant with the twins and ended around two
weeks after the twins were born.  The
complainant’s mother testified that the abuse “occurred over this last summer,
since last summer or last summer.”  She
also testified that the twins were born on November 28, 2007.  Appellant did not present any contrary
evidence suggesting the abuse did not occur over a period at least 30 days in
duration.  Because the evidence shows
that the abuse occurred over at least several months of time, this weighs
against a finding of egregious harm.

3.                
Arguments of Counsel

At
the beginning of its closing arguments, the State explained that the difference
between Count One, continuous sexual abuse of a child, and Counts Two and
Three, aggravated sexual assaults of a child, is that the former requires acts
of sexual abuse occurring over 30 or more days. 
Specifically, the State reiterated the trial court’s charge that the
jury was not to convict for continuous sexual abuse if the jurors were not sure
that the acts were “outside” 30 days of each other.[3]  The State explained, “If you don’t believe
the date was proved up outside the 30 days, then you go in and you consider
whether the State proved up the Aggravated Sexual Assault of a Child on two
different occasions.”

The
State then proceeded to apply the evidence in the case to the requirement of
proving that the offenses occurred at least 30 days in duration.  The State did this using the complainant’s
testimony that the sexual abuse began during the summer when her mother was
pregnant with the twins and ended when the twins were around two weeks old.  The State then interpreted this testimony in
light of the mother’s testimony that she gave birth to the twins on November
28, 2007.  Counting backward, the State explained
its deduction that the sexual abuse began during summer 2007, the last day of
which was September 22.[4]  Counting two weeks forward from the date of
the twins’ birth, the State explained its deduction that the last instance
occurred around December 15, 2007.  As explained
above, this period was approximately 85 days in duration, and there
clearly was at least 28 days in between the date of the first act of sexual
abuse and the date of the last act. 
Appellant’s trial counsel made no closing arguments regarding the
duration element.

 

 

          4.       Other
Relevant Information 

          We note
that the indictment, read to the jury at the beginning of trial, contains the
same phrase challenged on appeal. 
Appellant did not object to the phrasing of the indictment or claim he
lacked notice.

          During voir dire, the trial court identified the three counts in
the indictment.  The State then explained
that Count One, continuous sexual abuse of a child,
“has to do with whether the other two counts happened over a period of time.”  The State read to the venire the statutory
definition for continuous sexual abuse of a child.  It then explained that “you have to have at
least two separate sexual assaults[,] . . .
and they have to be at least 30 days apart.” 
Appellant’s trial counsel did not address the element of duration.  

Having determined that the jury application
instruction erroneously failed to expressly require
the jury to find that the two acts of sexual abuse occurred at least 30 days in
duration, we nevertheless conclude appellant was not egregiously harmed by the
error.  The jury instructions examined in
their entirety clearly explain that the acts of sexual abuse must occur during
a period that is 30 days or more in duration. 
The evidence plainly describes acts of sexual abuse over more than two
months.  Furthermore, the State’s voir dire and closing arguments repeatedly informed the
jury to find appellant guilty of Counts Two and Three,
the lesser-included offenses of aggravated sexual assault occurring on or about
July 1, 2008, and on or about August 1, 2008, if it was not convinced that the
acts occurred over a period 30 days or more in duration.

We hold that the jury instruction did not egregiously
harm appellant.  See Bazanes v.
State, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref’d) (erroneous application paragraph that omits
essential element of offense did not constitute egregious harm where abstract
portion sets forth essential element, sufficient evidence to show essential
element, and jury was not misled by arguments of counsel but was repeatedly and
correctly advised that State had to prove essential element).  We overrule appellant’s third and fourth
issues.

Exclusion of Evidence

In his fifth and sixth
issues, appellant contends the trial court abused its discretion by excluding
evidence offered for impeachment of the complainant’s mother.  The excluded evidence—text messages sent by
the complainant’s mother to appellant and testimony describing voicemail
messages left by the complainant’s mother for appellant—purportedly shows the
mother was biased with a motivation to lie and prior inconsistent statements.[5]  None of the messages concern
the allegations of sexual abuse and instead all the messages relate solely to
the poor relationship between the complainant’s mother and appellant.  The complainant’s mother testified that she
did not reveal her knowledge about the sexual abuse for fear of appellant’s
reaction if he learned she knew about the abuse. 

We review trial court rulings concerning admission or
exclusion of evidence under an abuse of discretion standard.  Sexton v. State, 93
S.W.3d 96, 99 (Tex. Crim. App. 2002); Erdman v. State, 861 S.W.2d 890,
893 (Tex. Crim. App. 1993).  A
trial court abuses its discretion when it acts arbitrarily and unreasonably,
without reference to any guiding rules or principles.  Montgomery v. State, 810 S.W.2d 372,
380 (Tex. Crim. App. 1990) (citing Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985).  Evidence admissible as impeachment under Rule
613 may be excluded under Rule 403 if it needlessly
would present cumulative evidence.  See
Winegarner v. State, 235 S.W.3d 787,
791 (Tex. Crim. App. 2007); Tex. R. Evid. 403 (“Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.”).    

The probative value of the excluded evidence is
minimal.  It does not directly refute any
element of the charged offense, which is established
by the complainant’s testimony.  It is
undisputed that none of the messages concerned the sexual abuse, which
complainant’s mother explains was because she did not want the appellant to
know she had learned about the abuse for fear of his reaction to that.  Rather, appellant wished to admit the text
messages and testimony as to the content of the voicemail recordings to show
that they were hateful.  By showing that
the complainant’s mother hated appellant, he hoped to establish her motive for
lying on the stand and her motive for having allegedly coached her daughter
into lying at trial.  That the
complainant’s mother hated appellant is equally consistent with what a mother
might feel upon recently finding out that her husband had been sexually abusing
her child.   

The excluded evidence was cumulative of other evidence
admitted at the trial.  The trial court
allowed appellant’s counsel to cross-examine the
complainant’s mother regarding her prior marriage and divorce from the
complainant’s father as well as her marriage with appellant.  Regarding her ex-husband, she testified that
the marriage was acrimonious and the divorce was lengthy and contentious.  She testified that her marriage to appellant was
acrimonious and hot-tempered and that it involved lots of yelling and
screaming, at times in front of the children. 
She explained that appellant has a drinking problem, that she would get
mad at him for drinking too much, and that she would become especially irate
when he would use her car to go out drinking. 
The testimonies of the complainant and her older son corroborated the turbulent
nature of the complainant’s mother’s marriage to
appellant.  During closing arguments,
appellant’s trial counsel was able to use this evidence to argue to the jury
that the complainant’s mother had a bias and motive to lie, even without having
been able to cross-examine the complainant’s mother regarding the text messages
or voice mail recordings.  

We hold the trial court did not abuse its discretion
by determining the evidence was overly cumulative as compared to its probative
value.  See Winegarner,
235 S.W.3d at 791. 
We also hold that because appellant has failed to demonstrate that the
excluded evidence was important to his defense, his due process rights were not violated by the exclusion of the evidence.  Potier v. State, 68 S.W.3d 657, 659–60 (Tex. Crim. App. 2002).  Furthermore, appellant waived his appellate
challenge asserting a violation of the Confrontation Clause by failing to
object at trial on that ground.  See Reyna v. State, 168
S.W.3d 173, 179 (Tex. Crim. App. 2005).

We overrule appellant’s fifth and sixth issues.

Conclusion

          We
affirm the judgment.

 

                                                                   

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Chief Justice Radack and Justices
Alcala and Bland.

 

Publish.  Tex. R. App. P. 47.2(b).











[1]           See Tex.
Penal Code Ann. § 21.02(e)(3) (West 2007).





[2]        The Code does not require
that the acts of sexual abuse be committed against the same victim.  Tex. Penal Code Ann. § 21.02(b)(1) (West Supp. 2010).





[3]           The
State slightly misstated the law, in favor of
appellant:  the acts need not be “outside”
30 days.  See
Tex. Penal Code Ann.
§ 21.02(d); Williams, 305 S.W.3d
at 890–91.  The Code requires at least 30 days in
duration.  See Tex.
Penal Code Ann. § 21.02(d).

 





[4]           The State’s argument was not that the complainant knew
that the last day of the summer season occurs on the autumnal equinox but that even when measured from the
last possible day of summer to the day of the last incident, the period is still well in excess of the at least 30 days in duration requirement.  Rather than the end of the summer season, it
appears more likely that the complainant was referring to the end of summer
break from school, which is commonly understood to be
August in Texas.  By measuring from the
last day of the summer season, the State was viewing the evidence in the light
most favorable to appellant.





[5]
       The text messages and testimony as to the
voicemail recordings that appellant sought to admit as well as other related
testimony made outside of the presence of the jury shows the following:  Appellant’s mother testified that when
her son came to move in with her shortly after the complainant’s mother left
him, she saw the text messages and overheard the voicemail recordings,
recognizing the complainant’s mother’s voice from standing two feet away.  Appellant’s mother testified as to the
content of the voicemails, which repeated, almost verbatim, the content of the
text messages.  Appellant’s mother
regarded the text messages and voicemail recordings from the complainant’s
mother as hateful and hurtful so she advised appellant not to respond.  Two
days after she left, the complainant’s mother sent appellant a text message
saying, “I cant begin 2 imagine what ur going thru missing babies but i
told u this would happen-u left me no choice. I feel like I tried evrything u just didnt
care.”  At some unidentified point, the complainant’s mother sent a text message
saying, “For as long as your anger controls u nothing will get better or
easier.  Why cant u talk so something can b worked out?”  Almost two weeks after leaving appellant, she
sent another text message to appellant saying, “R u prepared 2 never see ur babies again?”  The next morning, she sent a message saying,
“One last thing- where can I send divorce papers?”  In the afternoon, she sent another message
saying, “If u really r @ eai i
could bring the babies to visit[.]”  The complainant’s mother explained that EAI
is a drug recovery place that had treated appellant before.  She explained that she remembered appellant
saying he was at EAI around this time, but that she did not believe he was
there.  Finally, at some unidentified
point, the complainant’s mother sent a
text message saying, “After the way u treated me last couple months, the things
i tried 2 warn u about & u havent
done a dam thing 2 try-im not buying it ur a desperate liar[.]”