

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00021-CR
_____

QUARTSHEZZ LEONARD LEWIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 19F-0920-202

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

A Bowie County jury convicted Quartshezz Leonard Lewis of continuous sexual abuse of a young child and recommended a sentence of sixty years' confinement in prison. The trial court sentenced Lewis in accordance with the jury's recommendation. Lewis appeals, maintaining that there was legally insufficient evidence that at least two acts of sexual abuse occurred over at least a thirty-day period as required by the statute and that the application portion of the guilt/innocence charge was faulty in not requiring two acts to occur over at least a thirty-day period. Because we find that (1) sufficient evidence supported the jury's guilty verdict and (2) the claimed jury-charge error was not egregiously harmful, we affirm the judgment of the trial court.

*(1)      Sufficient Evidence Supported the Jury's Guilty Verdict*

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Williamson*, 589 S.W.3d at 297 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018) (citing *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004))).

Under Section 21.02 of the Texas Penal Code,[1] the State was required to establish beyond a reasonable doubt that, between May 15, 2013, and continuing until on or about September 30, 2014, Lewis, (1) who was seventeen years of age or older, (2) committed two or more acts of sexual abuse against A.B.,[2] a child younger than fourteen years of age, (3) during a period that was thirty days or more in duration. *See* TEX. PENAL CODE ANN. § 21.02 (Supp.). The predicate offenses alleged against Lewis were that he committed (1) aggravated sexual assault of a child when he intentionally or knowingly caused the penetration of A.B.'s sexual organ with his finger when A.B. was younger than fourteen years of age[3] and (2) indecency with a child by sexual contact when, with the intent to arouse or gratify his sexual desire, Lewis engaged in sexual contact with A.B. by touching her genitals when she was younger than seventeen years of age.[4]

Lewis concedes that the State presented evidence that "three events" occurred between May 2013 and September 2014.[5] He maintains, however, that there was insufficient evidence to

---

[1]Section 21.02 states that a person commits the offense of continuous sexual abuse of a child when,

(1)     during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts are committed against one or more victims; and

(2)     at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

TEX. PENAL CODE ANN. § 21.02(b).

[2]We refer to the child and any family members by initials to protect the child's privacy. *See* TEX. R. APP. P. 9.10(a)(3).

[3]*See* TEX. PENAL CODE ANN. § 22.021.

[4]*See* TEX. PENAL CODE ANN. § 21.11.

[5]Lewis does not challenge the State's allegations that he was seventeen years of age or older or that A.B. was a child younger than fourteen years of age at the time of the alleged offense.

4

support an inference that the first instance of sexual abuse occurred thirty or more days before the last instance of sexual abuse. We disagree.

At trial, twelve-year-old A.B. testified that, when she was around five or six years old, she sometimes stayed overnight at her Aunt L.W.'s[6] apartment so that her mother, B.W., could go to work.[7] A.B. explained that, while she was at L.W.'s apartment, Lewis, who lived there off and on, would sexually abuse her.[8] According to A.B., the first time it happened, Lewis "chased [her] from downstairs to upstairs, and [she] tried to run from him, but[, on the stairwell,] he had pulled [her] panties down" and touched her "private area" with his hands. A.B. said, "His hands were moving around on my private area."

A.B. also described an incident at her aunt's apartment when Lewis came to her bed, which she was sharing with her siblings, "pulled [her] tights down, and then he opened [her] legs, and then he put the flashlight on there, and he touched [her] middle part, but not with the flashlight." She said that "he just flashed it on [her] middle part" and "was moving" his hand. According to A.B., while he was moving his hand, he penetrated her "middle part" with his fingers. During that incident, Lewis was not wearing any clothes, and A.B. said she could see his "middle part." A.B. also said that the incident occurred sometime after the February 22, 2014, birth of a son to Lewis.

---

[6]Lewis had been in a long-term relationship with L.W.

[7]L.W. and B.W. were sisters.

[8]D. E. Evans, an investigator with the Texarkana, Texas, Police Department (TTPD) testified that Lewis stayed at L.W.'s apartment in 2014. According to Evans, Lewis provided that information to the police department.

A.B. also explained that Lewis abused her at other times while she was on the bed. During those times, her brother and sister were in the bed with her. A.B. remained afraid of Lewis because she believed Lewis would continue to hurt her whenever she was at L.W.'s apartment.

A.B. also testified that sometimes Lewis would touch her while her clothes were off, but on other occasions when she would be wearing clothes. If A.B. was dressed during the incident, Lewis would touch her under her clothes. When those events occurred in the apartment, the other children and L.W. would be asleep. A.B. described L.W. as being a hard sleeper. A.B. recalled having stayed overnight at L.W.'s apartment on more than two occasions and that Lewis touched her "private part" with his hand more than three times.

B.W. testified that she lived in the same apartment complex as L.W. between August 2013 and September 2014. B.W. began working as a caregiver at the Colonial Lodge around November 2013 and stopped working there in June 2015. At that time, A.B. was approximately five or six years old. On occasion, B.W. would work the night shift, which began at 10:00 p.m. and ended at 6:00 a.m. On those nights, B.W. would take A.B. and her siblings to stay with L.W. B.W. also confirmed that, between on or about May 15, 2013, and on or about September 30, 2014, she had worked overnight at the Colonial Lodge for a period greater than thirty days.[9]

On June 17, 2019, A.B. told B.W. that Lewis had "raped" her during the time she stayed at L.W.'s apartment. According to B.W., A.B. told her that Lewis touched her "private parts" on several occasions. B.W. went immediately to the TTPD and made a report. B.W. stated that A.B.

---

[9]Later, B.W. testified that she began working at Colonial Lodge in November 2013, and the record shows that she received her first paycheck on November 15, 2013.

6

identified a photograph that had been taken around Easter in 2014[10] and that A.B. told her that Lewis had sexually abused her around that time. In addition, B.W. agreed that A.B. was five or six in May and that that was "the period of time that [A.B.] indicated she was being sexually abused."

L.W. testified that B.W. left A.B. and her siblings with her to spend the night on two or three occasions. L.W. stated that she knew A.B. well and that A.B. had no reason to make false accusations against Lewis.

Keleigh Dodson, a therapist and forensic interviewer at the Texarkana Children's Advocacy Center, testified that A.B. spoke to her about the abuse "from her memory." According to Dodson, A.B. was able to tell her that Lewis had abused her and where the abuse occurred. Dodson stated that she had no concerns about five-year-old A.B.'s inability to give her specific dates as to when Lewis abused her, explaining, "Developmentally that's just not how their brain works. We typically say at about 10 years old, if that incident occurred, they should be able to tell when, but even then, it's not always." Dodson said a child around A.B.'s age "cannot tell [her] the difference in today and tomorrow."

To support a conviction for continuous sexual abuse of a child, the State is not required to prove the exact dates of the sexual abuse, but it is required to show "that two or more acts of sexual abuse occurred during a period of thirty days or more." *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.) (citing *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2016, pet. ref'd)). In addition, although the jury is not required to agree on which

---

[10]In 2014, Easter was in April.

7

specific acts were committed by the defendant or the dates on which they occurred, it must

unanimously agree that the defendant committed two or more acts of sexual abuse over a period

of thirty or more days. TEX. PENAL CODE ANN. § 21.02(b)(1); *Garner*, 523 S.W.3d at 271.

In *Hooper*, the Texas Court of Criminal Appeals explained that juries are permitted "to

draw multiple reasonable inferences as long as each inference is supported by the evidence

presented at trial. However, juries are not permitted to come to conclusions based on mere

speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15. The

court went on to clarify the difference between an inference and a conclusion based on speculation:

> [A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

*Id.* at 16. To illustrate the difference between the two, the court posed the following hypothetical:

> A woman is seen in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other facts must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation.

*Id.*

Citing *Smith v. State*, the State contends that it presented sufficient evidence to support the

jury's conclusion that the last act of sexual abuse occurred thirty or more days after the first act.

*See Smith v. State*, 340 S.W.3d 41 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We agree. In

*Smith*,

> [t]he complainant testified about the period of time when the sexual acts occurred. She described that appellant began making her place her mouth on his sexual organ during the summer when her mother was pregnant with the twins. She further stated that on one occasion, he placed his mouth on her sexual organ around the end of the summer. She testified that the incidents of sexual abuse stopped when the twins were newborns, about two weeks old. The twins were born on November 28, 2007, according to the complainant's mother's testimony. This evidence places the sexual abuse as starting sometime during summer 2007 and ending sometime around December 15, 2007. As the State explained during closing arguments, the last day of summer 2007 was September 22. Thus, the complainant's testimony attests to a period of at least 85 days in duration.

*Id.* at 48.

In this case, A.B. testified that Lewis sexually abused her when she was staying at L.W.'s apartment around the time that Lewis's son was born, which occurred on February 22, 2014. The State also presented evidence that Lewis sexually abused A.B. at L.W.'s apartment sometime around Easter 2014, when A.B. was five years old and about to turn six years old. The evidence also showed that, in 2014, Easter occurred in the month of April. Moreover, Evans testified that Lewis stayed at L.W.'s apartment during 2014. Although A.B. was unable to state the specific date on which Lewis abused her, the testimony presented by the State—the early date being around February 22, 2014, after Lewis's son was born and the latter date being around Easter in April 2014, was sufficient evidence for the jury to have inferred that Lewis sexually abused A.B. on at least two occasions and that those occasions occurred thirty or more days apart. *See Witcher v. State*, No. PD-0034-21, 2022 WL 224269, at *2 (Tex. Crim. App. Jan. 26, 2022) (only the Westlaw citation is currently available).

9

Accordingly, we overrule this point of error.

*(2)    The Claimed Jury-Charge Error Was Not Egregiously Harmful*

Lewis also maintains that the jury charge was erroneous because it did not require two acts of sexual abuse to have occurred over at least a thirty-day period. According to Lewis, the error resulted in egregious harm. Although we find that there was error in the jury charge, we conclude that such error did not cause egregious harm.

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abnor*, 871 S.W.2d at 731–32)).

The level of harm that must be shown as having resulted from an erroneous jury instruction depends on whether the appellant properly objected to the error at trial.[11] *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). When a proper objection is made at trial, reversal is required if there is "some harm" "calculated to injure the rights of defendant." *Id.*; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). But, when the defendant fails to object to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant.[12] *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing

---

[11]To preserve error relating to a jury charge, there must either be an objection or a requested charge. *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996).

[12]At trial, Lewis did not complain of the charge language of which he now complains.

10

*Almanza*, 686 S.W.2d at 171); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). In evaluating for egregious harm, we must decide whether the error created such harm that the appellant did not have a "fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19; *see Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171. "Neither the State nor the defendant has a burden to prove harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

As always, "the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. A trial court must submit a charge "setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). It is not the function of the charge merely to avoid misleading or confusing the jury; it is the function of the charge to lead and prevent confusion." *Id.*

In this case, the application paragraph in the jury instructions provided,

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that defendant, Quartshezz Lewis, did then and there, during a period that was 30 or more days in duration, to-wit: May 15, 2013[,] and continuing until on or about September 30, 2014, in Bowie County, Texas, committed two or more acts of sexual abuse against [A.B.] (a pseudonym), a child younger than 14 years, namely, Aggravated Sexual Assault of a Child, the defendant did then and there intentionally or knowingly cause the penetration of the sexual organ of [A.B.] (a pseudonym), a child who was then and there younger than 14 years of age, by the defendant's finger; Indecency with a Child by Sexual Contact, with intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [A.B.] (a pseudonym), by touching the genitals of [A.B.] (a pseudonym), a child who was then and there younger than 17 years of age, then you will find the Defendant guilty of the offense of Continuous Sexual Abuse of a Child as charged in the indictment.

11

According to Lewis, because the application paragraph did not expressly require two or more acts of sexual abuse to have occurred over at least a thirty-day period, the jury charge contained error. Contrary to Lewis's contention, the jury charge did, in fact, require the jury to find Lewis guilty of continuous sexual abuse of a child if "during a period of 30 or more days in duration, to wit: May 15, 2013, and . . . September 30, 2014," he committed two or more acts of sexual abuse against A.B. In other words, the instruction in the jury charge was very similar to the language that Lewis maintains should have been contained in it. Nevertheless, we find that the charge contained error.

In *Smith*, the Houston First Court of Appeals found that the trial court's jury charge was erroneous because it allowed the jury to find Smith guilty if two or more acts of sexual abuse occurred during a specific period that was longer than thirty days, regardless of whether the acts occurred at least thirty days apart. *Smith*, 340 S.W.3d at 50. In that case, the application paragraph stated,

> Now, if you find from the evidence beyond a reasonable doubt that *on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration*, in Brazoria County, Texas, the defendant Jesse James Smith, committed two or more acts of sexual abuse against [the victim], said acts of sexual abuse having been violations of one or more of the following: [two acts of aggravated sexual assault are described], then you will find the defendant guilty of the offense of Continuous Sexual Assault of a Child, as alleged in Count One of the Indictment.

*Id.* Finding error in the charge, the appellate court explained,

> The precise phrasing in the application paragraph does not specifically require a finding that the last act of sexual abuse occurred [30 or more days] after the day of the first act. Rather it allows a finding of guilt if two or more acts of sexual abuse occurred "on or about the 1st day of December 2007, through the 1st day of

12

September 2008, which said time period being a period that was 30 days or more in duration." This instruction lacks clarity in that, read literally, it allowed the jury to find appellant guilty so long as two or more acts of sexual abuse occurred between December 2007 and September 2008, regardless of whether the acts occurred at least 30 days apart.

*Id.* The same reasoning applies in this case. Here, the application paragraph contains "error because it confuses the statutorily required thirty-day period for continuous sexual abuse with the 'on or about' periods alleged with respect to commission of the predicate offenses." *See Turner v. State*, 573 S.W.3d 455, 462 (Tex. App.—Amarillo 2019, no pet.). In other words, the jury could have easily read the instruction as directing it to find Lewis guilty if (1) there were thirty or more days between the dates in the indictment, that is, May 15, 2013 and September 30, 2014, and (2) during that time, Lewis sexually abused A.B. on two or more occasions.

In *Turner*, the Amarillo Court of Appeals addressed a similar charge issue in a continuous sexual abuse of a child case. There, the jury instructions stated, in relevant part,

Now bearing in mind the foregoing instructions, if you unanimously believe from the evidence beyond a reasonable doubt, that defendant DAVID BLAKE TURNER, on or about June 1, 2013 through August 1, 2013 . . . **during a period that was 30 days or more in duration** . . . intentionally or knowingly commit[ted] two or more acts of sexual abuse against [victim],

then the jury should find Turner guilty. *Id.* at 462 (emphasis added). The State argued that the application paragraph was not erroneous because it tracked the statutory requirements of the offense of continuous sexual abuse of a child. *Id.* The *Turner* court was not convinced. Finding error in the charge, the court stated,

Unfortunately, the State's argument relies too heavily upon the assumption that the statute itself is an example of clarity. Broken down into its component parts, the application paragraph used in this case does nothing more than the application

13

paragraph in *Jimenez*,[13] by requiring that (1) *during* a period of thirty days or more (2) the defendant intentionally or knowingly committed two or more acts of sexual abuse. While someone with understanding of the statute might argue that this provision is clear, the express language used does not make it clear that the first and last acts must occur thirty or more days apart. Like *Jimenez*, because the application paragraph here suggests to the jury that the thirty-day requirement was met if it found Appellant committed two or more acts during a period of thirty days or more, it was erroneous.

*Id.* at 462–63. The same is true here. Consequently, we find the application paragraph contained an erroneous instruction.

Because Lewis failed to object to the trial court's jury charge, "we apply the 'egregious harm' standard wherein reversal is required only if the charge error was 'so egregious and created such harm that the defendant has not had a fair and impartial trial.'" *Gomez v. State*, 459 S.W.3d 651, 660 (Tex. App.—Tyler 2015, pet. ref'd) (quoting *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)). In determining whether Lewis "was deprived of a fair and impartial trial, we review the entire charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* at 660–61 (citing *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). "We will examine any part of that record that may illuminate the actual, not just theoretical[,] harm to the accused." *Id.* at 661 (citing *Taylor*, 332 S.W.3d at 489–90). "Errors which result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and

---

[13]In *Jimenez v. State*, the Amarillo Court of Appeals held that the jury charge contained error because it suggested that the thirty-day statutory requirement was met if the jury found that Jimenez committed two or more acts of sexual abuse during a period of thirty days or more, and not that those acts occurred thirty or more days apart.

significantly [more] persuasive." *Id.* (citing *Taylor*, 332 S.W.3d at 490). Egregious harm is a demanding standard, "and such a determination must be done on a case-by-case basis." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), *overruled on other grounds by Castillo-Fuentes v. State*, 707 S.W.2d 559, 563 (Tex. Crim. App. 1986)).

> In his brief, Lewis concedes that
>
> [t]he abstract portion of the charge correctly defines the offense of continuous sexual abuse of a child. The defense's closing argument addressed the thirty day period. Thus, all of these factors weigh against a finding the error in the charge was egregious. However, there is no evidence to support the factual issue at issue in the erroneous portion of the charge. As such, the charge resulted in egregious harm.

In that way, Lewis seemingly re-asserts his sufficiency claim. As we discussed previously, A.B. and her mother attested to two days around which the sexual abuse occurred, that is, around Lewis's son's birth on February 22, 2014, and around Easter in April 2014. That testimony supported the jury's conclusion that the last act of sexual abuse occurred thirty or more days after the first act. *See Smith*, 340 S.W.3d at 48. It is true that A.B.'s testimony lacked some specificity. Yet, considering that she was around six years old at the time of the abuse and twelve years old at the time of trial, her testimony and her mother's similar testimony recounted a consistent narrative. The jury was free to give their testimony more weight and probative value than it might have given it had their testimonies differed. Also, in his closing argument, Lewis explained to the jury in simple, direct, and correct terms what was meant by the thirty-day requirement. He stated,

> Because one of the elements in this case is that any act, whether it be aggravated sexual assault of a child, has to be two or more acts that occur in a period over 30 days in duration, and you, that, I mean, literally that is an element. It has to happen over a period of more than 30 days. **If it happened 29 days in a row and stopped, that's not continuous sexual abuse of a child. It may be 29 counts of**

**aggravated sexual assault, but it's not the main charge in the case. That is important because it's an element [of continuous sexual abuse of a child].**

(Emphasis added.) Lewis's statements made it clear to the jury that the two acts of sexual abuse had to have been separated by at least thirty days. According to Lewis, anything less would not have satisfied one of the required elements of the offense of continuous sexual abuse of a child.

Considering those factors, we cannot say that the error in the application paragraph of the jury charge resulted in egregious harm to Lewis. Accordingly, we overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted: November 24, 2021
Date Decided: March 4, 2022

Do Not Publish

16