**Affirmed and Majority and Dissenting Opinions filed August 10, 2023.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-22-00328-CR

_____

**JOHN AUSTIN GARRETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 506th Judicial District Court
Waller County, Texas
Trial Court Cause No. 21-02-17562**

## M A J O R I T Y   O P I N I O N

A jury convicted appellant John Austin Garrett of the first-degree felony of continuous sexual abuse of a young child,[1] and the trial court sentenced him to life in prison. Appellant contends the evidence is insufficient to support his conviction because the State failed to establish that two or more acts of sexual abuse occurred

_____

[1] Tex. Penal Code § 21.02(b).

during a period of thirty or more days in duration. Further, appellant argues that he was denied due process because the trial judge was biased against him.

We overrule his first issue because legally sufficient evidence shows that appellant committed two or more acts of sexual abuse against the complainant during a period of thirty or more days in duration. We overrule his second issue because the trial judge's post-sentencing comments do not reflect a lack of impartiality, nor does the record otherwise support appellant's allegation that the trial judge displayed a bias against him.

We affirm the judgment.

## Background

Appellant challenges the sufficiency of the evidence only as it relates to proof that two or more acts of sexual abuse occurred during a period of thirty or more days in duration, so we confine our summary of the evidence accordingly.

In July 2017, after appellant and the mother of his children separated, appellant left his home in Arkansas with his three young sons and moved in with his parents in Waller County, Texas. At that time, appellant's thirteen-year-old niece,[2] A.G., also lived with appellant's parents. A.G. described appellant as "like a father" to her; he was someone she could "just talk [to] a lot." She and appellant's young sons often rode around at night with appellant in his truck, but by the end of August 2017, appellant's sons stopped riding with them. Beginning in October 2017, appellant and A.G. would leave the house after appellant's parents went to bed and would not return until early in the morning. During these rides, appellant provided A.G. with alcohol, and she would drink until she was intoxicated.

---

[2] A.G.'s mother is appellant's sister.

A.G. testified that, in early November 2017, she and appellant were on one of their typical, late-night drives. They were returning from Houston when appellant stopped at a gas station and purchased alcohol and sunglasses. After they left the gas station, A.G. became intoxicated after consuming numerous alcoholic beverages provided to her by appellant. Appellant stopped the truck and told A.G. to take off her clothes. She began to comply, but appellant "got impatient, so he started to take them off." Appellant then got on top of A.G. and placed his penis in her vagina for "five to ten minutes." A.G. was crying during the entire incident. When she began "hyperventilating," appellant told her to "shut up." After they returned home, appellant told A.G. that if she said anything about what had happened, he would kill her grandmother—his mother—and showed A.G. a handgun.

A.G. described a second incident that occurred the week before Thanksgiving 2017.[3] She and appellant were driving around for a couple hours, and A.G. again drank numerous alcoholic beverages provided by appellant. They stopped in a rural area, and appellant instructed A.G. to take off her clothes. Appellant sexually assaulted A.G. by penetrating her vagina with his penis for about five minutes. After this assault, A.G. told appellant that she planned to tell her grandmother. Appellant slapped A.G. and, when she began crying, he warned her again that he would kill her grandmother if she said anything about the abuse.

A.G. described a third incident that happened "at the beginning of December," which again took place at night in appellant's truck. She recalled having around four alcoholic beverages but stated that she felt "more intoxicated" than any other time. A.G. was unable to describe where they drove or exactly what occurred, saying her memory was "very blurry from the third time," but she recalled appellant "climbing

---

[3] Thanksgiving fell on November 23, 2017. Thus, the week before Thanksgiving included the dates of November 12 to November 18, 2017.

off of [her], telling [her] to get dressed." A.G. testified that this third incident occurred before she went to Florida to join her mother for the 2017 Christmas holidays. A.G. testified that she thought she went to Florida the "the week of Christmas." While A.G. was in Florida, she threatened to kill herself; she described herself as "living in fear" because she was concerned for her grandmother's life. After A.G. made this threat, her mother called the police. A.G. was evaluated at a hospital in Florida, and she stated she spent Christmas Eve, Christmas Day, and the next two days hospitalized. She returned to Texas in mid-January 2018, after spending her fourteenth birthday on January 9, 2018 with her mother and stepfather in Florida.[4]

A jury convicted appellant of continuous sexual abuse of a child under fourteen. After a presentence investigation and punishment hearing, the trial court sentenced appellant to confinement for life in the Texas Department of Criminal Justice, Institutional Division.

Appellant timely appealed.

## Analysis

### A.    Sufficiency of the Evidence

In his first issue, appellant contends the evidence is insufficient to support his conviction because the State failed to establish that two or more acts of sexual abuse, as set forth in the indictment, occurred during a period of thirty or more days in duration.

---

[4] A.G. also detailed a fourth, and final, incident of sexual abuse that occurred in Texas in January 2018 after her fourteenth birthday. She was in appellant's room watching television with appellant's sons when appellant entered the room and told the boys to leave. Appellant put his hand in her pants and on the outside of her vagina. He removed her clothing and sexually assaulted her by penetrating her vagina with his penis.

1. *Standard of review and applicable law*

In determining whether the evidence is legally sufficient to support a conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *see also Braughton v. State*, 569 S.W.3d 592, 607-08 (Tex. Crim. App. 2018). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidentiary weight and witness credibility. *See Braughton*, 569 S.W.3d at 608; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). "The complainant's testimony, standing alone, is sufficient to support [a] conviction for continuous sexual abuse of a young child." *Gutierrez v. State*, 585 S.W.3d 599, 607 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13. A jury may draw reasonable inferences from the evidence but may not come to conclusions based on mere speculation. *Witcher v. State*, 638 S.W.3d 707, 710 (Tex. Crim. App. 2022). A jury may draw multiple reasonable inferences from facts, so long as each is supported by the evidence presented a trial. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

A person commits the offense of continuous sexual abuse of a child if the person commits two or more acts of sexual abuse against a child under fourteen

during a period that is thirty or more days in duration, when the person is at least seventeen years of age at the time each act of abuse is committed. *See* Tex. Penal Code § 21.02(b); *Pelcastre v. State*, 654 S.W.3d 579, 584 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd).

### 2. *Legally sufficient evidence supports the jury's verdict.*

Appellant does not contest the sufficiency of the evidence as to the first and second acts of sexual abuse described above.[5] Nor does he dispute that, during the relevant time period, he was "17 years of age or older and the victim [was] a child younger than 14 years of age." *See* Tex. Penal Code § 21.02(b)(1), (2). His appellate argument focuses on the third incident. According to appellant, the State failed to present legally sufficient evidence establishing that an act of sexual abuse occurred during the third incident, and further, assuming the third incident constituted an act of sexual abuse, there is no evidence that the first and third incidents occurred more than twenty-nine days apart.

A.G. could not recall the details of the December 2017 incident. She said that her memory was "very blurry from the third time." Appellant provided her with several alcoholic beverages before the incident and she felt much more intoxicated than the previous incidents. Although she did not specifically recall the actual act, she remembered appellant "climbing off" her and telling her to get dressed. Appellant contends that there was "no evidence regarding what state of undress A.G. or appellant were in or any other circumstantial evidence to indicate that sexual contact or penetration occurred."

---

[5] *See* Tex. Penal Code § 21.02(c)(4) (defining "act of sexual abuse" to include "aggravated sexual assault under Section 22.021"); *see also id.* § 22.021(a)(1)(B)(i) (defining aggravated sexual assault to include "caus[ing] the penetration of the anus or sexual organ of a child by any means").

The jury was not considering A.G.'s testimony in a vacuum. The evidence related to the previous two incidents may inform the jury's consideration of the third incident. *See Hooper*, 214 S.W.3d at 13 (explaining that, in reviewing legal sufficiency, we should look at "events occurring before, during and after the commission of the offense," including the defendant's actions). As explained, A.G. detailed the first two incidents of sexual abuse, and in each of those incidents, appellant plied A.G. with alcohol, instructed her to remove her clothes, climbed on top of her, and sexually assaulted her by penetrating her vagina with his penis. Additionally, though the fourth act of sexual abuse occurred after A.G.'s fourteenth birthday and thus could not constitute a predicate act supporting a conviction for the charged offense, the jury nonetheless was entitled to consider the circumstances of that incident in evaluating appellant's actions during the third incident. *Cf. Turner v. State*, 573 S.W.3d 455, 460 (Tex. App.—Amarillo 2019, no pet.) (considering out-of-state incident, which could not be used for purposes of proving offense of continuous sexual abuse of a child, as evidence of the appellant's "plan or motive" because the appellant's subsequent Texas offenses were committed in a similar manner). Based on A.G.'s testimony, the jury was permitted to draw the reasonable inference that appellant committed an act of sexual abuse in December similar to the acts he committed in November and January and in a similar way. *See id.* (explaining that an inference "is a conclusion reached by considering other facts and deducing a logical consequence from them"); *see also Witcher*, 638 S.W.3d at 709-10; *Pearson v. State*, 431 S.W.3d 733, 735-36 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We conclude that the jury need not have speculated, theorized, or guessed to reach the reasonable finding that appellant sexually assaulted A.G. in December 2017 in the same manner as he had sexually assaulted her during the other incidents. *Cf. Pearson*, 431 S.W.3d at 735-36; *see also Flanagin v. State*, No. 05-19-00858-CR, 2021 WL 2253502, at *6 (Tex. App.—Dallas June 3, 2021, no pet.)

(mem. op., not designated for publication) (although child only specifically described one act of sexual abuse, her testimony that the same "kind of touching" occurred previously provided legally sufficient evidence to support conviction for continuous sexual abuse of a young child).

Having concluded that the jury rationally could have inferred that appellant committed an act of sexual abuse in December 2017, we turn to appellant's alternative contention that the State failed to establish that at least two acts of sexual abuse occurred within a time period that was thirty or more days in duration. Although the exact dates of the abuse need not be proven, there must be some proof, circumstantial or direct, that the last act of sexual abuse occurred on at least the twenty-ninth day after the day of the first act. *See* Tex. Penal Code § 21.02(b); *Lane v. State*, 357 S.W.3d 770, 774 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Appellant acknowledges that the first two acts described by A.G. "occurred sometime between November 1, 2017, and, approximately, November 19, 2017." He also acknowledges that the third incident occurred in early December before A.G. traveled to Florida for Christmas. He argues that "the third act could have occurred within a period of time that was less than 30 days from the first two acts," and the jury must have "improperly speculate[d] that the last date of the sexual abuse was 30 or more days after the first act."

Appellant's argument disregards the applicable standard of review. We review the evidence in the light most favorable to the jury's verdict. Viewed in that light and based on the testimony, the jury reasonably could have found that the first act of sexual abuse occurred as early as November 1 and that the third incident occurred in early December. A.G. clearly and unequivocally testified that the third incident occurred in early December and, on cross-examination, she was adamant

that she did not leave for Florida the first week of December. Accordingly, the jury could have believed that she was in Texas from December 1 through December 7. Therefore, the evidence supports a finding that the third incident occurred as late as December 7, which is undoubtedly thirty or more days from November 1. Although the state of the record would have permitted the trier of fact to have found appellant not guilty of the charged offense if it found that the first act of abuse occurred, for example, on November 19 and the third act occurred on December 1, the jury also could have found that the first and third acts were separated by thirty or more days. The standard of review compels us to assume the jury reached the latter finding. And we are to uphold the verdict so long as the evidence is legally sufficient to support it, consistent with the statutory requisites. We conclude that it is. We disagree with appellant that the jury must have necessarily speculated about the dates of the incidents described by A.G.

Although A.G. was vague about the exact dates that the sexual assaults occurred, courts "give wide latitude to the testimony of child sexual abuse victims," and "a child victim's description of what happened and when it occurred need not be expressed with the same level of sophistication and detail that an adult might use." *Turner*, 573 S.W.3d at 459; *see also Witcher*, 638 S.W.3d at 709-10 (concluding that testimony about dates, despite being described as "give or take" and "around," provided legally sufficient evidence to support conviction for continuous sexual abuse of a child). A.G.'s grandmother testified that A.G. left for Florida before December 15, but it was the jury's province to resolve any conflicts in the testimony. *See Braughton*, 569 S.W.3d at 608; *Criff*, 438 S.W.3d at 136-37. Further, A.G.'s testimony, standing alone, is sufficient to support appellant's conviction. *See Gutierrez*, 585 S.W.3d at 607.

Based on the evidence presented, the jury reasonably could have found that the first incident in early November and the third incident in December occurred during a period that is thirty or more days in duration. *See* Tex. Penal Code § 21.02(b)(1); *see also Witcher*, 638 S.W.3d at 709-10; *Turner*, 573 S.W.3d at 461 (overruling sufficiency challenge when evidence supported reasonable inference that the appellant committed two or more acts of sexual abuse over a period of thirty days or more, even though the time frame was "close"); *Lane*, 357 S.W.3d at 774 (relying on testimony that abuse occurred in the "fall" and evidence showing hotel stays where abuse also occurred in late January and early February to show that the incidents occurred thirty or more days apart); *Smith*, 340 S.W.3d at 48 (accepting September 22 as the last day of summer 2007 for purposes of computing thirty-day or more period where complainant described abuse as beginning during "the summer" of that year); *see also Flanagin*, 2021 WL 2253502, at *6 (overruling sufficiency challenge when the complainant only specifically described one incident that occurred in the fall, but vaguely referred to other incidents that she thought had happened a few times before her birthday, which occurred during the previous summer); *Lewis v. State*, No. 06-21-0021-CR, 2022 WL 630288, at *4-5 (Tex. App.—Texarkana Mar. 4, 2022) (mem. op., not designated for publication), *cert. denied*, 214 L. Ed. 388, 143 S. Ct. 740 (2023).[6]

---

[6] As the *Lewis* court stated, "While we acknowledge that throughout the child's testimony, she was very unsure, provided vague information and scant detail about any specific incident of sexual abuse, was unable to provide specific dates of the alleged early incidents of sexual abuse, her age when those incidents occurred, what grade she was in at school or even where she was living at the time the incidents occurred, such weaknesses in the testimony did not conclusively refute or make impossible a finding a guilt. It was the trial judge's responsibility in this bench trial to resolve conflicts in the testimony, to weigh the evidence, both its strengths and its weaknesses, and to draw reasonable inferences from basic facts to ultimate facts." *Lewis*, 2022 WL 630288, at *4-5.

In sum, viewing the evidence in the light most favorable to the jury's verdict, the jury reasonably could infer that appellant sexually assaulted A.G. during the incident that occurred in the beginning of December 2017. Further, the jury reasonably could have found that as many as three instances of sexual abuse against A.G. occurred while she was thirteen years old and took place during a period of thirty days or more in duration. We therefore hold that a rational jury could have found all the elements of this offense beyond a reasonable doubt.

We overrule appellant's first issue.

## B. Right to Impartial Judge

In his second issue, appellant contends he was denied his right to an impartial judge because certain post-sentencing comments by the judge demonstrate bias.

### 1. *Standard of review and applicable law*

A defendant has a right to a neutral and detached hearing body or officer. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2005) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). When reviewing allegations of bias, we afford trial courts broad discretion to express themselves and their opinions, including opinions that may be critical, disapproving, and even hostile toward a party or his attorney. *See Gaal v. State*, 332 S.W.3d 448, 455 (Tex. Crim. App. 2011). To show that an alleged bias denied a party due process, the party must demonstrate a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Absent a clear showing of bias, we presume a trial court's actions were not so tainted. *Brumit*, 206 S.W.3d at 645.

We begin by observing that appellant does not cite any place in the record where he made a request, objection, or motion based on the trial judge's allegedly biased remarks. *See* Tex. R. App. P. 33.1(a) (requiring a timely request, objection,

or motion to preserve a complaint for appellate review). But violations of some rights, including denials of "absolute, systemic requirements," may be challenged for the first time on appeal. *See Marin v. State*, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); *see also Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017) ("[C]laims of improper judicial comments raised under Article 38.05 are not within *Marin*'s third class of forfeitable rights. Rather, we believe that the right to be tried in a proceeding devoid of improper judicial commentary is at least a category-two, waiver-only right."). Both this court and the First Court of Appeals have reviewed for fundamental error unpreserved complaints that the trial judge was not impartial. *Barfield v.* State, 464 S.W.3d 67, 81 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Avilez v. State*, 333 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Presuming without deciding that appellant's second issue implicates the type of systemic error that we may address for the first time on appeal, we conclude nonetheless that the record here does not reflect partiality of the trial court or that a predetermined sentence was imposed. *See Brumit*, 206 S.W.3d at 644-45; *Avilez*, 333 S.W.3d at 672-73.

### 2. *Application*

After the jury found appellant guilty, the trial court reset the case for a presentence investigation ("PSI"). After the PSI was completed, the court held a punishment hearing. During that hearing, the State presented evidence establishing appellant's history of sexual assault against victims other than A.G. When appellant was a juvenile, he sexually assaulted the mentally and physically disabled stepdaughter of his aunt, Darlene Delarosa. Mrs. Delarosa testified that her eighteen-year-old, physically disabled stepdaughter had the mental acuity of a ten- or eleven-year-old when appellant anally and vaginally sexually assaulted her. Mrs.

Delarosa testified about the tremendous fear that the sexual assault caused in her stepdaughter and about the impact it had had on her life. Appellant was adjudicated and committed to the Texas Youth Commission for that incident.

One of appellant's recent ex-girlfriends testified that appellant repeatedly sexually assaulted her while they were dating. She described appellant as a habitual drug user who is violent, out of control, and irrationally angry.

The State also presented evidence concerning appellant's non-assaultive juvenile history, including adjudications for burglary. This evidence included a pending indictment for theft in Harris County, which was alleged to have been committed while appellant was on probation in Waller County for felony possession of a controlled substance.

After hearing this evidence, the trial court sentenced appellant to confinement for life in the Texas Department of Criminal Justice, Institutional Division. As support for his argument that the judge displayed "explicit and deep-seated antagonism toward appellant and sympathy for the complainant and her family," appellant relies on the judge's following statements made after pronouncing appellant's sentence:

> Personally, I do feel that evil does exist in this world and I wanted to specifically talk with Mrs. Delarosa. You know, for what you had to go through was, you know, pretty devastating. But you really impressed me, ma'am, because you were able to forgive him. You know, that's -- I don't think I could have done that. I mean, for what he did with your daughter is just, you know, horrific. And, I mean, you're a better person than I am. And God bless you for being that type of person. I don't know if you'll ever be able to repair the family relationship, but I hope so. As to Ms. Garrett,[7] I've been doing this 30 years. You know, sometimes people come in and they'll have two kids that are great and one bad apple and they raised them the same way and

---

[7] Mrs. Garrett is appellant's mother and A.G.'s grandmother.

13

nobody knows why. And, you know, so what you need to understand is evil does exist. And, you know, you need to not blame yourself. Okay? I mean, you shouldn't do that because, you know, his actions shouldn't have any -- believe me, I've seen it. So I just want you to know that, that you're not the only person that has had really good kids and then one bad apple. Okay? With that said, I would love to apologize to [Mrs. Delarosa's daughter] but, you know, obviously she's not here and probably wouldn't understand.

But, [A.G.], for what you've gone through, I'm so sorry. But time does heal. Okay? And don't let this man or what happened to you define who you are or who you will be in the future. Okay? Let -- you know, let it go. If you can forgive him, you know, I'm a God-fearing man. If you can ever get to that point, I think you'll be better off. Okay?

Mr. Garrett, I'm -- I think I'm doing you a favor, sir. I'm going to take away any temptations to do this in the future. I think you're a predator. I think you need to get right with God and I think that's the only way, you know, this is ever going to work out for you. But, you know, I hope you'll have time to reflect on your life and -- and maybe you can one day get over this and maybe -- maybe God can help you get to that point.

Nothing in these statements reflects that the trial judge was biased against appellant or that he did not consider the full range of punishment. *See Brumit*, 206 S.W.3d at 645. As this excerpt makes clear, most of the judge's comments were directed toward showing compassion to appellant's victims. Further, the "evil," "bad apple," and "predator" comments directed at appellant are similar to those challenged in *Brumit*. There, in an aggravated sexual assault of a child case, before sentencing Brumit to life, the trial judge: (1) referred to Brumit as the "worst kind of predator"; (2) commented that, based on a prior case involving a child murdered after being sexually assaulted, he thought "that anybody that ever harmed a child should be put to death"; and (3) stated that Brumit's punishment would deter Brumit and "anybody else that might contemplate doing what [he] did." *Id.* at 640-41. The *Brumit* court explained that the trial judge listened to testimony about the effects of

14

the abuse on the victims and their families and was particularly impacted by the victim's thoughts of suicide. *Id.* at 645. The court also considered Brumit's history of child sex assault. *Id.*

Here, as in *Brumit*, the trial judge's comments indicate that he listened to evidence regarding appellant's other victims, which included a final determination that appellant sexually assaulted a mentally and physically disabled young woman. As in *Brumit*, it was only after hearing the evidence that the trial court made the challenged comments. In today's case, appellant does not rely on any remark the judge made before hearing all the evidence. Further, there is nothing in our record to indicate the trial judge failed to consider the full range of punishment before sentencing appellant to life in prison. *Cf. Ex parte Brown*, 158 S.W.3d 449, 454-57 (Tex. Crim. App. 2005) (holding that appellant's due process right was violated when trial court promised twenty-year punishment when deferring guilt finding and later imposed promised punishment after applicant pleaded true to violation allegations at adjudication hearing); *Cabrera v. State*, 513 S.W.3d 35, 39 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (when trial court stated before jury selection that if appellant exercised his right to a jury trial he should not be "under any illusion" that he would receive a thirty-day sentence; trial court's statement "clearly indicate[d]" that the court arbitrarily dismissed a portion of the permissible range of punishment); *Earley v. State*, 855 S.W.2d 260, 262-63 (Tex. App.—Corpus Christi 1993, pet. dism'd, improvidently granted) (trial court prejudged punishment before hearing any evidence); *Jefferson v. State*, 803 S.W.2d 470, 471-72 (Tex. App.—Dallas 1991, pet. ref'd) (due process violation when trial court imposed predetermined punishment after promising defendant at deferred adjudication plea that he would receive maximum sentence if he violated probation).

Appellant suggests that another remark by the trial judge during the guilt-innocence phase demonstrated the judge's "partiality" toward the complainant. In addressing A.G. while she was testifying, the court said, "I know this is tough." In making this statement, however, the trial judge was asking A.G. to speak up so the jury could hear her. The court's *complete* statement was: "I know this is tough, *but if you could repeat what you said*." (Emphasis added). That statement is remarkably like one challenged in *Brookins v. State*, 499 S.W.2d 320, 324 (Tex. Crim. App. 1973), also a sexual assault trial. In that case, the court commented to the complainant, "I know it's a little hard on you. It's quite an ordeal for you to go through, but speak up." *Id*. The Court of Criminal Appeals explained that, rather than being an objectionable comment on the weight of the evidence, the trial judge's statement was permissible as "an attempt to ease the witness so that proceedings could continue." *Id*. Indeed, the record in today's case reflects that A.G. was asked to repeat herself or speak up several times during the trial. As such, the judge's comment does not demonstrate any partiality and instead reflects a permissible attempt to ease A.G. so that the jury could hear her testimony.

For these reasons, we conclude that the record does not reflect partiality of the trial court or that a predetermined sentence was imposed. And absent a clear showing to the contrary, we presume the trial judge was neutral and detached in assessing appellant's punishment and that he considered the full range of punishment. *See Gaal*, 332 S.W.3d at 458; *Brumit*, 203 S.W.3d at 645.

Accordingly, we overrule appellant's second issue.

**Conclusion**

Having overruled each of appellant's issues, we affirm the trial court's judgment.

/s/    Kevin Jewell
        Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Spain (Spain, J., dissenting).

Publish — Tex. R. App. P. 47.2(b).