

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00034-CR

_____

SHAWN MICHAEL KEITH, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15847

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Shawn Michael Keith appeals from his convictions for one count of continuous sexual abuse of a child and two counts of sexual assault of a child. In a single issue on appeal, he challenges the sufficiency of the evidence to support his convictions, arguing that no reasonable jury could have believed the complainant's testimony and version of events, which is the sole proof that he committed the offenses. Because the applicable standard of review delegates the resolution of this credibility question to the jury, we overrule appellant's issue and affirm his convictions.

## II. BACKGROUND[1]

A grand jury issued a six-count indictment against appellant, alleging that he had committed (1) one count of continuous sexual abuse of a child based on two underlying aggravated sexual assaults of a child younger than fourteen, (2) one count of aggravated sexual assault of a child younger than fourteen, (3–4) two counts of sexual assault of a child younger than seventeen, (5) one count of sexual performance of a child younger than eighteen, and (6) one count of possession of child pornography. *See* Tex. Penal Code Ann. §§ 21.02(b), 22.011(a)(2), 22.021(a)(1)(B)(i),

---

[1]Because our discussion of appellant's sole issue requires a recitation of the offense-specific facts, we will confine the background section of this memorandum opinion to the procedural facts of the case.

2

(2)(B), 43.25(b), 43.26(a). At appellant's later jury trial, the State proceeded only on the one count of continuous sexual abuse and the two counts of sexual assault of a child. The jury convicted appellant of all three counts and assessed his punishment at confinement for life for the continuous sexual abuse and twenty years' confinement for each of the sexual assaults. The trial court sentenced appellant accordingly. The trial court also dismissed the remaining three indictment counts on the State's motion. Appellant timely filed a notice of appeal.

### III. DISCUSSION

In a single issue on appeal, appellant challenges the sufficiency of the evidence to support his three convictions. Although he acknowledges "that the testimony of a victim alone is sufficient to support a conviction," he contends that because the testimony of the complainant here was "so patently unbelievable, this [c]ourt should conclude that no rational trier of fact could conclude that [the testimony] went beyond a mere modicum of evidence to prove the conduct alleged."

### A. Standard of Review

In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

3

inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's

4

burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021).

## B. Elements of Continuous Sexual Abuse and Sexual Assault of a Child and Indictment's Charges

Count One of the indictment charged appellant with committing continuous sexual abuse. A person commits the offense of continuous sexual abuse if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims," and if, "at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older[2] and the victim is . . . a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense." Tex. Penal Code Ann. § 21.02(b). Here, the underlying acts of sexual abuse alleged in the indictment were aggravated sexual assaults: that when the complainant was fourteen years old, appellant had penetrated her sexual organ (1) with his finger and[3] (2) with his penis.[4] *See id.* § 21.02(c) (listing offenses qualifying

---

[2]Appellant does not argue that the State failed to prove that he was seventeen or older when he committed the offenses.

[3]The indictment did not list these underlying sexual-abuse offenses in the conjunctive; in other words, it did not require the jury to find that appellant had

5

as sexual abuse for Section 21.02(b) purposes), § 22.021(a)(1)(B)(i), 2(B). The location where the underlying acts of sexual abuse occurred is not an element of the offense, and Section 21.02(b) does not require that all elements of the offense be committed in one county. *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd); *Meraz v. State*, 415 S.W.3d 502, 505 (Tex. App.—San Antonio 2013, pet. ref'd).

In Counts Three and Four, the indictment charged appellant with penetrating the complainant's sexual organ with his penis on or about July 2, 2022, and on or about August 3, 2022, when she was under the age of seventeen. *See* Tex. Penal Code Ann. § 22.011(a)(2)(A).

## C. Analysis

### 1. The Complainant's Testimony Relevant to Continuous Sexual Abuse

The complainant was fifteen at the time of trial in early January 2024. She testified that appellant was a close family friend and that she had known him for as

---

committed at least one penetration with his finger *and* at least one penetration with his penis. *See* Tex. Penal Code Ann. § 21.02(d) (providing that the jury is not required to agree unanimously on the specific acts of sexual abuse that occurred during the thirty-day-or-more period so long as it agrees that two or more separate acts occurred during that period).

[4]After appellant's counsel affirmatively stated that he had no objection, the trial court allowed the State to amend the date range for the continuous sexual abuse count so that the State had to prove the underlying aggravated sexual assaults occurred from "on or about June 1, 2018, through May 14, 2022." The change was handwritten on the indictment, and the trial judge, the prosecutor, and appellant's counsel initialed the change.

long as she could remember. According to the complainant, when she was nine or ten years old and living in Amarillo—around the time her stepfather died—appellant put his fingers inside her vagina. Appellant told the complainant not to tell anyone because if she did, he would go to prison for the rest of his life; he also gave her candy so that she would not tell anyone what he had done.

When the complainant was around twelve years old,[5] appellant moved to Granbury; thereafter, the complainant would visit him there with her family. The complainant testified that when she visited appellant, he allowed her to drink alcohol and smoke marijuana, and he bought her alcohol that he knew she liked.

In May 2021, when the complainant was thirteen, appellant and his father came to Amarillo on the last day of school to pick up the complainant and her brothers and sister; the children lay down in the back seat of the pickup truck while appellant's father drove from Amarillo to Granbury. The complainant testified that after they had stopped at a gas station in Decatur, Texas on the way—and appellant's father had gone inside the store—appellant took pictures of her breast, "vagina," and "butt" under her clothes. Although appellant had awakened the complainant, her siblings were asleep next to her in the back seat of the truck.

The complainant testified that on the same night, after the group had arrived at appellant's parents' house in Granbury and everyone but appellant and the

_____

[5]The complainant's twelfth birthday was in May 2020.

7

complainant were asleep,[6] appellant touched her breasts and touched her "inside" her vagina. According to the complainant, almost "every night" thereafter, for the rest of the visit, appellant touched her inside her vagina with his fingers.

In October 2021, the complainant and her family went camping with appellant and visited Six Flags in Arlington. The complainant testified that after everyone had returned to the campsite and gone to bed, she was alone in appellant's RV[7] cleaning up. Appellant came inside the RV, smoked marijuana with her, and then touched "inside" her vagina with his fingers.

## 2. The Complainant's Testimony Relevant to Sexual Assault

In summer 2022, when the complainant was fourteen years old, her mother took the family to Granbury to visit appellant, who was still living with his parents. The complainant testified that around July 4, 2022, appellant directed her to sleep in his bedroom; after everyone else was asleep, he penetrated her vagina with his penis. It hurt and scared her. As he had before, appellant told her not to tell anyone.

---

[6]The complainant explained that when she stayed with appellant and his parents, appellant decided where she and her siblings would sleep. He directed her to sleep in the guest room or in his bed in his room; "[m]ost of the time," he "told [her] to sleep in a place where it was just [her]." On cross-examination, the complainant testified that her siblings slept on the floor in appellant's room and that appellant's parents slept in a third bedroom.

[7]On cross-examination, the complainant explained that no one slept in the RV on that trip; they all slept outside in a tent.

8

The complainant testified that later that summer appellant again penetrated her vagina with his penis. They were in the hot tub in the backyard of his parents' house, drinking alcohol and smoking marijuana. Although appellant's parents had gone inside the house, the complainant's siblings had gone to sleep in a tent in another part of the "pretty big" backyard. According to the complainant, appellant had unplugged the motion-sensor light that would have illuminated the hot tub, but the porch lights on the back patio of the house were on.

Finally, the complainant testified that during the same summer 2022 trip, appellant "had sex" with her in a tent multiple times when they were camping by the lake in Granbury. Although the complainant's siblings were sleeping in the tent at the same time, they slept on one side of a divider that obscured their view of appellant and the complainant on the other side.

### 3. The Complainant's Outcry and Forensic Interviews

After the family returned to Amarillo—around the time school started—the complainant made an outcry that her mother's boyfriend had been sexually abusing her.[8] A sexual-assault exam was performed, and the complainant gave an interview. But at that time, she did not admit what had happened with appellant.

---

[8]The complainant admitted on cross-examination that around this same time, she had met with appellant and his father—a former law-enforcement officer—about the allegations she had made against her mother's boyfriend, and they both urged that law enforcement should be contacted.

9

About one to two weeks later, the complainant's mother asked her if appellant had done something to her, too; the complainant just started crying and "kind of shook [her] head yes." She also told her mother at that time that the allegations she had made against her mother's boyfriend were untrue. But the complainant testified at trial that she had lied to her mother about this latter statement because she felt like her mother did not believe her outcry against the boyfriend.

The complainant later gave a forensic interview about her allegations against appellant. The forensic interviewer's testimony about what the complainant told her was substantially similar to the complainant's trial testimony but with minor differences. For example, although at trial the complainant denied that appellant made her fondle his penis while he digitally penetrated her, the forensic interviewer testified that the complainant told her appellant had done so. According to the forensic interviewer, the complainant told her that she had not told the first forensic interviewer about appellant's abuse because he "made her feel special . . . , and she didn't want him to get in trouble."

### 4. Evidence is Sufficient

The complainant testified that beginning in May 2021, when she was thirteen years old, appellant touched her inside her vagina with his fingers multiple times. She also testified that in October 2021, he touched her inside her vagina with his fingers. This testimony is sufficient to prove that appellant committed the offense of continuous sexual abuse as alleged in Count One of the indictment. *See*

10

*id.* §§ 21.02(b), (c)(4), 22.021(a)(1)(B)(i), (2)(B); *Smith v. State*, 340 S.W.3d 41, 48–49 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Likewise, the complainant's testimony that appellant penetrated her vagina with his penis on at least two separate occasions in 2022—in his bed, in a tent, and in the hot tub in his parents' backyard— is sufficient to prove the sexual assault allegations in Counts Three and Four. *See* Tex. Penal Code Ann. § 22.011(a)(2)(A); *Guevara v. State*, 667 S.W.3d 422, 435–36 (Tex. App.—Beaumont 2023, pet. ref'd).

Although appellant acknowledges that a child complainant's testimony, standing alone, can be sufficient proof of a sexual offense, *see* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1), appellant argues that this court should make an exception if the complainant's testimony is "patently unbelievable" and "defies all logic." According to appellant, the complainant's testimony here is unbelievable because she admitted lying to her mother and because "[m]ost of [the incidents with appellant] allegedly occurred where others [were] nearby or in extremely close proximity."

We cannot usurp the jury's evaluation of a witness's credibility with our own. *See Queeman*, 520 S.W.3d at 622; *Guevara*, 667 S.W.3d at 435–36. The jury was entitled to believe the complainant's detailed and specific testimony that appellant sexually assaulted her on multiple occasions while she and appellant were alone and the only people awake. *See, e.g.*, *Reyes v. State*, No. 13-17-00035-CR, 2019 WL 1716794, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 18, 2019, no pet.) (mem. op., not designated for publication). The jury was also entitled to believe that appellant could

11

have accomplished these acts despite the presence of potential witnesses nearby. *See Baltimore v. State*, 689 S.W.3d 331, 342 (Tex. Crim. App. 2024) ("Juries may use common sense, common knowledge, personal experience, and observations from life when drawing [reasonable] inferences."). We therefore overrule appellant's sole issue.

## IV. CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 27, 2024