**Opinion filed January 9, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00237-CR
_____

## SHAYNE KENDELL LINDSEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR52373**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Shayne Kendell Lindsey, of the offense of continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2024). The jury assessed Appellant's punishment at thirty-five years' imprisonment, and the trial court sentenced him accordingly.

In a single issue, Appellant challenges his conviction and contends that (1) the trial court erred by failing to provide the date or dates necessary to prove that he committed the offense of continuous sexual abuse of a young child, and (2) as a result, the State failed to present sufficient evidence that multiple instances of sexual abuse occurred over a duration of thirty days or longer. We affirm.

## I. *Factual Background*

The victim of the indicted offense, X.L., was born on July 6, 2009; she was fourteen when she testified at trial. X.L. grew up believing that Appellant was her biological father. Although Appellant was identified on X.L.'s birth certificate as her father, Appellant testified that he is not X.L.'s biological father. Appellant had two other children with Brittany, X.L.'s mother.

Appellant began a dating relationship with Alexus in June 2013, and they had a child together. Alexus testified that beginning in 2015, X.L. and her siblings would go to Alexus's apartment on a regular basis to visit. In 2015, Alexus lived in the Newport Apartment complex in Midland, but sometime in 2016 she moved into another apartment complex.

X.L. testified that Appellant's sexual abuse began when Alexus lived in the previous apartment complex. While she could not remember the specific date, X.L. said that the sexual abuse started before her ninth birthday. She stated that the last act of sexual abuse occurred on September 9, 2018. X.L. recalled that on that day she and her siblings were at Alexus's apartment. Appellant and X.L. were lying on blankets on the floor watching television, and her siblings were in the same room playing. X.L. testified that Appellant's penis was underneath a blanket that covered them, and then Appellant made a gesture that X.L. understood to mean that he wanted her to "do something with his penis." Because he had done this before, X.L. knew what Appellant wanted her to do.

2

X.L. testified that she and Appellant went into the bathroom and that he sat on the toilet seat while "[she] was on her knees in front of him." She described "that something happened in the bathroom" with Appellant that caused a substance to go into her mouth. She "spit it out into the toilet," and Appellant gave her something to get the bad taste out of her mouth. X.L. testified that she also touched Appellant's penis with her hand and that he had "taught [her] beforehand" how to touch him. Appellant wiped himself off, and they left the bathroom. X.L. did not tell anyone right away what had occurred because she was "scared they would take [Appellant] away, and [Appellant] told [her] to keep it a secret."

Alexus testified that on September 9, 2018, she was not feeling well so she went into her bedroom to take a nap. She remembered that at some point, Appellant closed the door to her bedroom, and she went back to sleep. When she woke up, all the children and Appellant were in the living room, and everything appeared to be normal. X.L. and her siblings stayed at Alexus's apartment that night. The following day, Alexus was talking with the children, and X.L. began to tell Alexus what had happened the day before. Alexus then asked the other children to leave the room.

Alexus testified that X.L. told her Appellant made X.L. go into the bathroom where he pulled down his pants and made her touch his penis. X.L. told Alexus that Appellant then sat down on the toilet and that X.L. was "sucking" on his penis until "the white stuff came out," which X.L. spit into the toilet. Alexus said that X.L. described the sexual abuse as if it was normal conduct. After this, Alexus called Appellant and asked him to come home from work.

After Appellant arrived, Alexus confronted him with X.L.'s allegations. Alexus told Appellant to call Brittany, and then they took X.L. and the other children to Brittany's house. X.L. would not tell Brittany what had happened, but she wrote

it down on a notepad. Brittany then called the police, and Appellant was arrested and taken into custody.

Chance Rainer, a former Detective with the Midland Police Department, testified that he interviewed Appellant. During the interview, Appellant admitted that he had had X.L. perform oral sex on him and that he ejaculated in her mouth. Appellant maintained that he only committed that one act of sexual abuse. Portions of the video recording of Rainer's interview with Appellant were played for the jury.

Appellant testified and denied sexually abusing X.L. He acknowledged that in his interview with Detective Rainer he admitted to an isolated act of sexual abuse, but he explained that he believed the only way to end the interview was to tell Rainer what he wanted to hear. Appellant claimed that he falsely admitted to the allegations because of what had happened to him as a child.

## II. *Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence that he committed the crime of continuous sexual abuse of a young child.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the

4

factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Thus, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence, alone, can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

A person commits the offense of continuous sexual abuse of a young child if (1) during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and (2) at the time of the commission of each act of

5

sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time the offense is committed. PENAL § 21.02(b). "Sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), which includes the offenses of aggravated sexual assault of a child and indecency with a child by contact. *Id.* § 21.02(c)(2), (4); *see also id.* §§ 21.11(a)(1) (West 2019), 22.021(a)(1)(B). Here, the indictment alleged that:

> on or about September 9, 2018, in Midland County, Texas, [Appellant], during a period that was 30 or more days in duration, when [Appellant] was 17 years of age or older, did then and there intentionally or knowingly commit two or more acts of sexual abuse against X.L., to wit: aggravated sexual assault of a child and/or indecency with a child by contact, and X.L. was at the time of the acts of sexual abuse a child younger than 14 years of age.

The trial court's charge tracked the indictment.

Appellant specifically argues that because neither the indictment nor the trial court's charge indicate when Appellant's acts of sexual abuse began, a rational jury could not find him guilty of continuous sexual abuse of a young child. He further contends that the State failed to present any evidence of when the requisite thirty-day period began, and thus the jury could only speculate as to the dates of the alleged sexual abuse. We disagree.

"[A]lthough the exact dates of the [sexual] abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.); *see Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Appellant argues that the evidence was such that the jury could have only speculated that he committed multiple acts of sexual abuse against X.L. over the

6

course of thirty or more days. "Speculation is mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013) (quoting *Hooper*, 214 S.W.3d at 16). Conversely, "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* (quoting *Hooper*, 214 S.W.3d at 16). "Juries are permitted to draw multiple reasonable inferences from the evidence as long as each inference is supported by the evidence presented at trial." *Id.* (citing *Hooper*, 214 S.W.3d at 15).

X.L. testified that the sexual abuse began before she turned nine. The record shows that X.L. turned nine on July 6, 2018. X.L. further testified that the last time Appellant sexually abused her was on September 9, 2018. In addition, X.L. stated that Appellant first sexually abused her when Alexus lived in a "different apartment complex." Alexus testified that she moved from one apartment complex to another around 2016.

While X.L. only explicitly detailed one act of sexual abuse, she testified that she knew what Appellant wanted her to do on that occasion because it had happened before. After describing the act of sexual abuse that occurred on September 9, 2018, X.L. specifically stated that she had done that "most of the time that [she] went over to his . . . apartment." X.L. testified that what happened in the bathroom left "a bad taste in [her] mouth" and that she usually spit Appellant's semen into the toilet, but she also remembered one time that Appellant made her swallow it.

While there was no evidence of exactly when the sexual abuse began, X.L.'s testimony provided some evidence that the sexual abuse began before July 6, 2018, and ended on September 9, 2018. The Court of Criminal Appeals has for decades recognized that child victims cannot be expected to testify with the same clarity and ability that is expected of mature and capable adults. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). Therefore, "[t]he legislature created the offense

of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse." *Michell*, 381 S.W.3d at 561; *see Williams v. State*, 305 S.W.3d 886, 890 n.7 (Tex. App.—Texarkana 2010, no pet.) (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring)). Moreover, the uncorroborated testimony of a child victim is alone sufficient to support a conviction for a sexual offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2023); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd); *see also Villalon*, 791 S.W.2d at 134. Thus, X.L.'s testimony, without more, is sufficient to support Appellant's conviction. *See Soto v. State*, No. 11-19-00214-CR, 2021 WL 3235881, at *3 (Tex. App.—Eastland July 30, 2021, no pet.) (mem. op., not designated for publication) (citing *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.)).

Viewing all the evidence in the light most favorable to the verdict, the record contains evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt that Appellant's sexual abuse of X.L. occurred over a period of thirty days or more. *See Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) ("The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece."); *Machado v. State*, No. 02-15-00365-CR, 2016 WL 3962731, at *3 (Tex. App.—Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication). We hold that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was guilty of the offense of continuous sexual abuse of a young child as charged in the indictment. Accordingly, we overrule Appellant's sole issue.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

January 9, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.